IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THAD THOMPSON, #A5013250, | ) CIV. NO. 17-00531 SOM-KJM |
| | ) |
| Plaintiff, | ) ORDER DENYING IN FORMA |
| | ) PAUPERIS APPLICATION AND |
| vs. | ) DISMISSING COMPLAINT |
| | ) |
| CAPT. PALEKA, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER DENYING IN FORMA PAUPERIS APPLICATION
## AND DISMISSING COMPLAINT

Before the court is pro se Plaintiff Thad
Thompson's prisoner civil rights Complaint and in forma
pauperis application ("IFP Application"). ECF Nos. 1,
2. Thompson claims that six Halawa Correctional
Facility ("HCF") or Department of Public Safety ("DPS")
prison officials violated his rights under the Eighth
Amendment.[1] For the following reasons, Thompson's IFP
Application is DENIED pursuant to 28 U.S.C. § 1915(g).
Thompson's Complaint is DISMISSED with leave granted to
amend pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

_____

[1] Thompson names HCF Capt. Paleka, Maintenance Supervisor,
Medical Supervisor, Chief Antonio, Warden Harrington, and DPS
Grievance Coordinator Shari Kimoto in their individual and
official capacities as Defendants.

as limited below.

## I.  **THOMPSON'S CLAIMS**[2]

On or about July 7 and 26, and August 27, 2017,
Thompson submitted "requests" to Capt. Paleka and the
HCF Maintenance Supervisor notifying them that the High
Security Unit ("HSU") shower was extremely dirty.  He
alleges that he received no reply.  Compl., ECF No. 1,
PageID #7.

Between August 7 and 27, 2017, Thompson submitted
"regular requests" to Capt. Paleka, Chief Antonio, and
Warden Harrington complaining that HCF prison officials
were not responding to any of his requests.  *Id.*

On September 2, 2017, Thompson had an "incident" at
HCF that caused him lower back pain.  *Id.*  Thompson
says that he submitted multiple medical requests
regarding lower back and other pain relating to the
incident.  He does not say whether he received or was
denied medical care for his back or provide any further
details about this incident.

_____

[2] Thompson's allegations of fact are accepted as true and
construed in the light most favorable to him.  *See Nordstrom v.
Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On September 8, 2017, Thompson developed a skin rash that he attributes to the dirty HSU showers. He does not describe the rash, but fellow inmate Raymond Sargent says he had contracted the same rash a few days earlier. *See* Sargent Dec., ECF No. 1-1. Sargent initially thought his rash was from bugs in his cell, but now believes it was from the dirty HSU shower. Sargent was given "cream [and] pills" and a "Medical Needs Memo" that allowed him to exchange his clothes and get supplies to clean his cell. *Id.*

On September 8 and 11, 2017, Thompson submitted two medical requests regarding his rash. He alleges his requests were not answered. Thompson does not, however, allege that he received no treatment for his rash.

On September 23, 2017, Thompson requested permission to see an outside "Nerve" specialist for his back. Compl., ECF No. 1, PageID #7. He was told that he was scheduled for an appointment with a medical provider. Thompson complains that the provider was not an "Outside Specialist," and that he had not seen this

provider as of the date that he signed the Complaint (October 10, 2017).  *Id.*

Thompson alleges that Defendants' actions or inactions violated his rights under the Eighth Amendment.  He seeks compensatory and punitive damages, declaratory relief, and a transfer to the Federal Detention Center-Honolulu.

## II.  28 U.S.C. § 1915(g)

Under 28 U.S.C. § 1915(g), a prisoner may not bring a civil action in federal court without first paying the filing fee, if three or more of his civil actions or appeals have been dismissed as frivolous, malicious, or failing to state a claim on which relief may be granted.  There is an exception to this three-strikes rule if the plaintiff's pleadings show that he is in imminent danger of serious physical injury.  28 U.S.C. § 1915(g).

Court records confirm that Thompson has filed three previous civil actions while imprisoned that were dismissed for failure to state a claim.  *See* PACER Case Locator, http://pacer.psc.uscourts.gov (last visited

Nov. 8, 2017); *see also Andrews v. King*, 398 F.3d 1113,
1120-21 (9th Cir. 2005) ("*Andrews I*") (stating "the
district court docket records may be sufficient to show
that a prior dismissal satisfies at least one of the
criteria under § 1915(g) and therefore counts as a
strike"). Those actions are: *Thompson v. Dep't of
Public Safety*, No. 1:17-cv-00250 DKW-KJM (D. Haw. Aug.
2, 2017) (dismissed for failure to state a claim);
*Thompson v. Dep't of Public Safety*, No. 1:17-cv-00235
LEK-KSC (D. Haw. Aug. 1, 2017) (same); and *Thompson v.
Burns*, No. 2:13-cv-01715-PHX-SPL (D. Ariz. July 14,
2014) (same; judgment entered Sept. 4, 2014).

The court has notified Thompson of each of these
dismissals. *See* No. 1:17-cv-00235, Order, ECF No. 23,
PageID #146 n.3 (alerting Thompson to the strike that
he accrued in the District of Arizona in *Thompson v.
Burns*, No. 2:13-cv-01715); *see also Thompson v.
Hamilton*, No. 1:17-cv-00520 JMS-RLP (D. Haw. Oct. 27,
2017) (denying IFP and directing payment; providing
copies of the three orders in which Thompson accrued
strikes). Thompson may not proceed in forma pauperis

5

in this action unless he was in imminent danger of serious physical injury when he commenced this suit. *See Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007) ("*Andrews II*") (holding that the imminent danger exception is based on the alleged conditions at the time the complaint was filed).

Thompson provides no information from which the court can find that his rash or his lower back pain constitutes imminent danger of serious physical injury. Thompson does not allege that he is being denied treatment by any Defendant for either condition. He alleges nothing that shows there is a genuine emergency or a concrete threat of serious harm caused by either infirmity. Rather, Thompson's primary complaints are that he contracted the rash from a dirty shower, prison officials denied his request to see an outside nerve specialist for his back pain, and prison officials are not properly responding to his requests and grievances. While a court "should not conduct an overly detailed inquiry into whether a particular danger is serious enough under the serious physical injury prong,"

*Andrews II*, 493 F.3d at 1055, courts are not required to "blindly accept a prisoner's allegations of imminent danger," *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010).

Nothing within the Complaint supports an inference that Thompson is (or was) in imminent danger of serious physical injury when he filed this action. Nor has he submitted facts showing a continuing practice that injured him in the past that poses an "ongoing danger." *Andrews II*, 493 F.3d at 1057. Thompson may not proceed in forma pauperis in this action; his IFP Application is DENIED.

Of course, Thompson may be able to allege sufficient facts to meet the imminent danger of serious physical injury exception. The court will, therefore, allow him to file an amended pleading. If he successfully shows that he is entitled to § 1915(g)'s exception, the court will reconsider its decision to deny the IFP Application. In the alternative, Thompson may submit the civil filing fee. Before Thompson submits an amended pleading or payment, however, he

should carefully consider the following evaluation of his claims.

### III. **SCREENING**

The court must conduct a pre-answer, sua sponte screening of prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Claims that are frivolous, malicious, fail to state a claim, or seek damages from defendants who are immune from suit must be dismissed. *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b))*; Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (discussing dismissal under § 1915(e)(2)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (discussing dismissal under § 1915A(a)). Rule 12(b)(6) requires that a complaint

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim need not be *probable*, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Leave to amend must be granted if it appears the plaintiff can correct the complaint's defects. *Lopez*,

203 F.3d at 1130.  Dismissal without leave to amend is only appropriate when "it is clear that the complaint could not be saved by any amendment." *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV.  <u>DISCUSSION</u>

Thompson is proceeding under 42 U.S.C. § 1983.  "To sustain an action under [§ 1983], a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009).

Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  "A person

'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A. Immunities

The "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). A "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Ex parte Young*, 209 U.S. 123 (1908).

Official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing

violation of federal law." *Oyama v. Univ. of Haw.*,
2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (*quoting
Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005),
*abrogated on other grounds by Levin v. Commerce Energy
Inc.*, 560 U.S. 413 (2010)).  In addition, neither a
state, state agency, nor state official acting in his
or her official capacity is considered a "person"
amenable to suit under § 1983.  *Will*, 491 U.S. at 71.

Hawaii has not unequivocally waived its sovereign
immunity, and Congress has not overridden that immunity
for civil rights actions brought pursuant to § 1983.
*See Will*, 491 U.S. at 66-67; *Krainski v. Nev. ex rel.
Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d
963, 967 (9th Cir. 2010) (stating that Eleventh
Amendment immunity extends to state instrumentalities
and agencies, as well as to state officials in their
official capacities); *Baranyi v. Univ. of Hawaii*, 2015
WL 3753091, at *3 (D. Haw. June 16, 2015).

Moreover, Thompson's request for declaratory relief
is subsumed by his claims for damages.  *See Rhodes v.
Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) ("And

12

because his claim for damages necessarily entails a determination whether the officers' alleged conduct violated his rights, his separate request for declaratory relief is subsumed by his damages action."). Further, this court lacks jurisdiction to transfer Thompson, a Hawaii state prisoner, to a federal prison, which is the injunctive relief that he seeks.

Finally, as discussed below, Thompson makes no plausible claim that he is subject to an ongoing constitutional violation. Thompson's claims against all Defendants named in their official capacities are DISMISSED with prejudice.

## B. Eighth Amendment Legal Standard

Thompson asserts that his claims arise under the Eighth Amendment. The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to state a conditions of confinement claim, and "only those deprivations

13

denying the minimal civilized measure of life's necessities are sufficiently grave" to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference." *Labatad v. Corr. Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be objectively "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d

14

1310, 1313 (9th Cir. 1995).

## C.  Count I

In Count I, Thompson alleges that Capt. Paleka and
the Maintenance Supervisor acted with deliberate
indifference to his health when they did not respond to
his written requests to clean the shower.  To be clear,
Thompson does not allege that any Defendant denied him
medical care for the rash; he complains only that
Paleka and the Maintenance Supervisor did not
personally respond to his complaints about the dirty
shower.

Long-term unsanitary conditions can violate the
Eighth Amendment.  *See*, *e.g.*, *Hearns v. Terhune*, 413
F.3d 1036, 1041–42 (9th Cir. 2005) (holding allegations
of broken toilets, rusted sinks, stagnant, insect-
infested pools of water, and no cold water in 100-
degree temperatures in the prison yard for nine months
were evidence of serious health hazards and stated a
claim under the Eighth Amendment); *Johnson*, 217 F.3d at
731-32; *Anderson*, 45 F.3d at 1314 (stating that a "lack
of sanitation that is severe or prolonged can

15

constitute an infliction of pain within the meaning of the Eighth Amendment").

### 1. *No Objective, Sufficiently Serious Deprivation*

Thompson provides little information in support of this claim. First, he alleges no facts showing that the dirty shower was so filthy and unsanitary that it constituted an extreme deprivation amounting to cruel and unusual punishment. Thompson does not allege that the toilets were broken and overflowing into the shower, that there was dirty standing water in the showers, that an excessive number of prisoners were required to use the shower, or any other clearly hazardous condition. He simply says they were dirty and not cleaned properly.

Second, Thompson provides few details regarding his rash. Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's "serious medical needs." *Estelle*, 429 U.S. at 104. A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744

F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439
F.3d 1091, 1096 (9th Cir. 2006).  Serious medical needs
"include the existence of an injury that a reasonable
doctor or patient would find important and worthy of
comment or treatment; the presence of a medical
condition that significantly affects an individual's
daily activities; or the existence of chronic and
substantial pain." *Colwell v. Bannister*, 763 F.3d
1060, 1066 (9th Cir. 2014) (citation and internal
quotation marks omitted); *accord Wilhelm*, 680 F.3d at
1122; *Lopez*, 203 F.3d at 1131).

Thompson does not detail where his rash is located
or how widespread or severe it is.  He does not allege
that the rash caused him undue pain or loss of sleep,
significantly interfered with his daily activities, or
became worse through continued exposure to the
allegedly dirty shower.  He asserts no long-lasting
effect from the rash.  Importantly, Thompson does not
allege that he was denied treatment for his rash.

Several courts have held that a rash "is a de
[minimis] injury that does not rise to the level of a

constitutional violation" and that there must be "some evidence linking the conditions of confinement and the rash" to state a claim. *Brown v. Pierce*, 2008 WL 619288, at *5 (C.D. Ill. Mar. 4, 2008) (citing *Mase v. Henry Cty. Jail*, 2006 W 3091046, at *1 (W.D. Va. Oct. 27, 2006) (stating that, even if the plaintiff "suffered from a rash, such minor skin conditions do not rise to the level of a "serious or significant physical injury"); *Dolberry v. Levine*, 567 F. Supp. 2d 413, 417 (W.D.N.Y. 2008) (characterizing a claim concerning an inmate's rash, allegedly due to the lack of showers, as a "de minimis injury that does not give rise" to an Eighth Amendment violation).

This court is certainly *not* saying that a rash can never present a serious medical need. But Thompson fails to allege facts showing that, objectively, the dirty showers or his rash were "sufficiently serious." *Farmer*, 511 U.S. at 834. Nor does he allege facts showing that his rash is connected to the dirty shower, beyond his own conclusory allegation. He thus fails to state an Eighth Amendment claim.

18

## 2.   *No Subjective Deliberate Indifference*

Even if Thompson could be said to have alleged
sufficient facts going to whether the HSU shower was so
excessively filthy that it constituted a severe,
extreme deprivation, to whether his rash is or was a
serious medical need, and to whether the dirty shower
caused his rash, he fails to show that Paleka and the
Maintenance Supervisor were aware of these allegedly
serious risks to his health and nonetheless disregarded
them.  *See Azukas v. Lajoie*, 2017 WL 4285688, at *2 (D.
Conn. Sept. 27, 2017).

First, Thompson does not explain what he told
Paleka and the Maintenance Supervisor in his written
requests regarding the allegedly filthy shower.  If
Thompson provided the same level of detail in these
requests to have the shower cleaned as he does in the
Complaint, he would not have put Paleka or the
Maintenance Supervisor on notice that the shower posed
a serious health risk.

Second, Thompson's Complaint shows that prison
officials responded to his and the other inmates'

complaints about the dirty shower, regardless of
whether Paleka and the Maintenance Supervisor
personally answered his requests. For instance, when
Thompson complained about the dirty shower on August
10, 2017, he says "ACO McGuire," was "very helpful,"
although he qualifies this by stating that McGuire's
help "was mostly ignored as it was taking too long."
ECF No. 1, PageID #7. Inmate Woods, whose declaration
is attached to the Complaint, states that the shower
was "properly scrubbed" at least twice after he was
housed at the HSU on August 23, 2017. *See* Woods Dec.,
ECF No. 1-3. Inmate Bringas attests to the same. *See*
Bringas Dec., ECF No. 1-2. Thus, the showers were
"scrubbed" at least twice after Thompson wrote Paleka
and the Maintenance Supervisor. *Id.* Inmate Sargent
also states that when Thompson and others complained to
a guard about the dirty shower, they were explicitly
told that someone would clean the shower, and someone
later did so. *See* Sargent Dec., ECF No. 1-1.

If Paleka and/or the Maintenance Supervisor
directed their subordinates to clean the shower and

were informed that the showers had been cleaned, then, even if the showers were not actually cleaned properly, Paleka and the Maintenance Supervisor may have been unaware of the deficiency. Moreover, they had no duty of which the court is aware to personally respond to Thompson's requests.

Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that each averment in the complaint "be simple, concise, and direct." Fed. R. Civ. P. (8)(a) & (d). These basic requirements ensure that a defendant has sufficient notice of the claims against him. *See Twombley*, 550 U.S. at 555. Thompson's claims against Paleka and the Maintenance Supervisor are too vague and conclusory to state a claim.

Thompson's bare allegations do not allow the court to infer that Paleka, the Maintenance Supervisor, or any prison official knew of and "disregard[ed] an excessive risk to" his health regarding the allegedly

dirty HSU shower. *Farmer*, 511 U.S. at 837. Thompson
must allege with at least some degree of particularity
overt acts taken by Paleka and the Maintenance
Supervisor that show they knew of an *excessive* risk to
his health, and, with reckless indifference, failed to
prevent or ameliorate this risk. Count I, as alleged
against Capt. Paleka and the HCF Maintenance
Supervisor, is DISMISSED with leave granted to amend.

**D.  Count II**

In Count II, Thompson alleges that Capt. Paleka,
Chief Antonio, Warden Harrington, and Shari Kimoto
acted with deliberate indifference when they generally
failed to respond to his grievances. *Id.*, PageID #10.

Thompson has a First Amendment right to petition
the government through the prison grievance system. A
defendant's actions in responding to a prisoner's
grievances or appeals, however, do not on their own
give rise to a  claim for relief under § 1983. A
prison's "grievance procedure is a procedural right
only, it does not confer any substantive right upon the
inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th

Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8,
10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334
F.3d 850, 860 (9th Cir. 2003) (holding that there is no
liberty interest in processing appeals because there is
no entitlement to a specific grievance procedure);
*Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)
(stating that existence of grievance procedure confers
no liberty interest on prisoner); *Mann v. Adams*, 855
F.2d 639, 640 (9th Cir. 1988).  A defendant's actions
in reviewing a prisoner's administrative appeal,
without more, are not actionable under § 1983.
*Buckley*, 997 F.2d at 495.  Regardless of whether these
Defendants denied Thompson's grievances or ignored
them, Thompson's allegations do not indicate a
constitutional violation in that regard.

   To the extent Thompson is attempting to connect
these officials to the harm that he allegedly suffered
through their failure to remedy a condition that he
allegedly brought to their attention (a matter that is
unclear), he fails to state a claim.  Supervisory
personnel may not be held liable under § 1983 for the

actions of subordinate employees based on respondeat superior or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Thompson fails to allege any facts to support a constitutional violation concerning the allegedly dirty HSU shower. Even if he could allege such facts, he fails to show that these Defendants personally participated in that violation. That is, he does not allege they directed Paleka, the Maintenance Supervisor, or any prison employee to ignore an extreme risk to Thompson's or other inmates' health posed by the dirty shower. Nor does he point to any policy that they implemented that resulted in such a condition. Count II, as alleged against Paleka, Antonio, Harrington, and Kimoto, is DISMISSED with leave to amend.

**E.  Count III**

In Count III, Thompson claims that the HCF Medical Supervisor acted with deliberate indifference to his serious medical needs when he or she "improperly handled" Thompson's request to see an outside nerve specialist for his "severe chronic lower back pains." *Id.*, PageID #13.

To prevail on an Eighth Amendment claim predicated

on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. *Jett*, 439 F.3d at 1096; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[ ] of and disregard[ ] an excessive risk to inmate health.'" *Peralta*, 744 F.3d at 1082 (quoting *Farmer*, 511 U.S. at 837).

A "mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alterations in original) (citation omitted). This rule applies whether the difference is between medical professionals and a prisoner or between medical professionals only. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). A prisoner asserting a deliberate indifference claim based on a difference of medical opinions must allege facts showing that "the course of

treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. The "'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983." *Jett*, 439 F.3d at 1096 (citing *Estelle*, 429 U.S. at 105); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

Thompson does not allege sufficient facts for the court to reasonably infer that the Medical Supervisor, or any prison medical provider, was deliberately indifferent to his serious medical needs. First, Thompson does not explain what happened after the September 2, 2017, incident when he injured his back.

He does not allege that he was denied treatment; he alleges that his request to see an outside nerve specialist was denied, although he was scheduled to see another medical provider.

Similarly, Thompson does not allege that he was denied treatment for his rash, he alleges that he received no response to medical requests that he submitted the day he developed the rash and three days later.  Again, to be clear, Thompson does not allege that the HCF Medical Supervisor denied or delayed treatment for the rash.  He restricts his claim against the Medical Supervisor to an alleged failure to "properly" respond to his request to see an outside nerve specialist.

Finally, Thompson fails to show that the HCF Medical Supervisor personally participated in or directed any violation or that he or she promulgated a policy that resulted in a constitutional violation. Count III, as alleged against the HCF Medical Supervisor, is DISMISSED with leave to amend.

## V.  LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend **IF** Thompson is able to adequately allege that, at the time he filed this action, he was in imminent danger of serious physical injury.  In that event, the court will reconsider the decision to deny the IFP application.  **In the alternative**, Thompson may submit the full civil filing fee, $400.00.

Thompson may file an amended complaint on or before December 13, 2017, that cures the deficiencies noted in his claims.  An amended complaint generally supersedes the previous complaint.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 907, n.1 (9th Cir. 2012) (en banc). Thus, an amended complaint should stand on its own without incorporation or reference to a previous pleading.  *See* Local Rule LR10.3.  Defendants not named and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *Id.* at 928 (stating claims dismissed with prejudice need not be repled to preserve

them for appeal, but claims that are dismissed with leave to amend are "waived if not repled").

## VI.   28 U.S.C. § 1915(g)

If Thompson fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).

## VII.   CONCLUSION

(1) Because Thompson has accrued three strikes pursuant to 28 U.S.C. § 1915(g), and because he fails to allege sufficient facts to support an imminent danger of serious physical injury, his in forma pauperis application is DENIED.

If Thompson elects to proceed with this action, he must **EITHER** pay the $400 filing fee **OR** submit an amended pleading on or before **December 13, 2017,** that supports a finding that he was in imminent danger of serious physical injury when he commenced this action. In that event, the court will reconsider its decision to deny Thompson's in forma pauperis application.

(2) Thompson's Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  Thompson may file an amended pleading on or before December 13, 2017, if he has paid the civil filing fee or has sufficiently alleged that he was in imminent danger of serious physical injury on the date that he commenced this action.  The amended pleading must cure the deficiencies noted in Thompson's claims.

(3) Failure to pay the civil filing fee OR file an amended pleading that plausibly alleges imminent danger of serious physical injury AND cures the original Complaint's noted deficiencies on or before December 13, 2017, shall result in DISMISSAL of this action and may constitute a strike under 28 U.S.C. § 1915(g).

(4)  The Clerk is directed to mail Thompson a prisoner civil rights complaint form so that he can
//
//
//
//
//

comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 13, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*Thompson v. Paleka,* No. 1:17-cv-00531 SOM-KJM; scrng 2017 Thompson 17-531 (no imm dgr ftsc skin rash)